# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CIVIL DIVISION

PALM BEACH DIABETES AND
ENDOCRINE SPECIALISTS, P.A.,
a Florida corporation

       Plaintiff,                        **JURY DEMAND**

v.                                     CASE NO.:

STERICYCLE, INC., a Delaware
corporation

       Defendant.

_____/

## COMPLAINT

Plaintiff, Palm Beach Diabetes and Endocrine Specialists, P.A.  ("Plaintiff" or "PBDES"), a Florida corporation, sues Defendant, Stericycle, Inc. ("Defendant" or "Stericycle"), a Delaware corporation, and states as follows:

## GENERAL ALLEGATIONS

## I. NATURE OF THE ACTION

1.     Plaintiff PBDES is a medical practice that seeks to recover hundreds of thousands of dollars from Defendant Stericycle based on Stericycle's fraudulent, misleading and wrongful conduct in the gross overcharging of PBDES for the provision of waste-disposal services over a number of years. Stericycle did not honor the fixed prices it promised to charge PBDES. Instead, Stericycle systematically and regularly increased the rates it charged PBDES – ultimately by over 700% of the agreed rate – without any justification and without even notifying PBDES it was doing so. Stericycle misled PBDES about its pricing and practices. The company failed to disclose to PBDES its practice of increasing prices, failed to notify PBDES that prices had

changed, and then lied to PBDES about the reasons for the price increases when challenged.

2.       Stericycle is a large, publically-traded medical-waste disposal company that provides medical waste collection and disposal services across the country for businesses, like PBDES, that generate regulated medical waste. Stericycle's business generates substantial revenues; in 2012, it posted $1.9 billion in revenue, and it has shown substantial revenue growth for many years running.

3.       In fact, Stericycle generated this extraordinary revenue and achieved its steady revenue growth by improperly programming its internal billing and accounting software to charge as much as an 18% price increase in the flat rates it agreed to charge customers – including PBDES – which its billing software imposed automatically every 6 to 12 months since at least 2003. This "automated price increase," or "API," to use Stericycle executives' corporate-speak, has never been disclosed to PBDES, and it is not permitted by any agreements PBDES may have had with Stericycle. Stericycle's practices were not fair, they were not right, and, as detailed below, they were against the law.

## II. **PARTIES**

4.       Plaintiff, Palm Beach Diabetes and Endocrine Specialists, P.A., is a Florida corporation with its principal place of business in West Palm Beach, Florida. PBDES provides medical care and other related services to patients with diabetes and other endocrine disorders at its four office locations in Palm Beach County. As part of its medical practice, each of PBDES's offices generates regulated medical waste that requires safe removal and disposal. PBDES has been victimized by Stericycle's gross overcharging practices for the disposal of medical waste for many years and has suffered significant damages.

5.       Defendant, Stericycle, Inc., is a Delaware corporation with its principal corporate

offices located at 28161 North Keith Drive in Lake Forest, Illinois, 60045. Its registered agent

is located at C T Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324.

At all material times, Stericycle has been, and still is, engaged in the business of providing

medical-waste disposal services in Florida.

### III. JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action.

7.      Subject-matter jurisdiction arises under 28 U.S.C. § 1332(a), as Plaintiff and

Defendant are citizens of different states, and the amount in controversy exceeds the sum of

seventy-five thousand dollars ($75,000), exclusive of interest and costs.

8.      Pursuant to 28 U.S.C. § 1391, this judicial district is the proper venue for this

action because a substantial part of the events, omissions, and acts giving rise to the claims herein

occurred in this District. Plaintiff is a citizen of this District, and Plaintiff engaged Defendant to

provide medical-waste disposal services to its medical practice in this District.

9.      This Court has personal jurisdiction over Defendant because Stericycle is

authorized to do business and in fact does business in this District and has sufficient minimum

contacts with this district and/or otherwise intentionally avails itself of the markets in the State

of Florida through the promotion, marketing, and sale of its waste-removal services in this

District, to   render the exercise of *in personam* jurisdiction by this Court consistent with

traditional notions of fair play and substantial justice.

### IV. FACTUAL ALLEGATIONS

10.     Stericycle has been in the regulated medical waste business since 1989.

Regulated medical waste is generally any medical waste that can cause an infectious disease and

includes single-use disposable items such as needles, syringes, gloves, and other medical

supplies; cultures and stocks of infectious agents; blood and blood products; and regulated pharmaceutical waste, which consists of expired or recalled pharmaceuticals.

11.     The regulated medical waste services Stericycle provides include its pickup and disposal services provided to the majority of its customers (called the "Steri-Safe" program), medical waste disposal, a clinical services program, reusable sharps disposal management services, pharmaceutical waste disposal, and hazardous waste disposal.

12.     In or around September 2009, a representative of PBDES signed four Steri-Safe Service Agreements (the "Agreement" or "Agreements") under which Stericycle was to provide medical-waste disposal services at PBDES's four office locations. Stericycle refers to PBDES as its customer accounts numbered 8169176, 8041631, 8069365, and 8041315, where each account number corresponds to a PBDES office location.

13.     The Steri-Safe Service Agreement is a standard form contract of adhesion drafted by Steri-Safe with no input from the customer. The terms and conditions of the Steri-Safe Service Agreement contain a choice-of-law provision that states that Illinois law governs any disputes between the parties to the contracts.[1] The Agreement also contains an automatic term renewal provision requiring affirmative action by the customer or Stericycle to terminate the Agreement or prevent automatic renewal.

14.     The Steri-Safe Service Agreement consists of a cover sheet listing "Steri-Safe Program Benefits," fees, a line for the customer's signature, and a separate writing titled "Steri-Safe Terms and Conditions." A copy of the Steri-Safe Service Agreements provided by Stericycle to PBDES are attached as **Composite Exhibit "1."**

---

[1] Because there may be uncertainty as to which state's law applies to this actions – Illinois' or Florida's – the Counts against Stericycle are plead under both in the alternative, separately, pending a determination by the Court at to the governing law.

15.     Each of the four Agreements provides that PBDES will pay Stericycle a fixed monthly fee in exchange for Stericycle's medical waste pickup and disposal services. The Agreements state that PBDES would be charged the following fixed monthly rates for medical waste pickup and disposal:

- Account No. 8169176: $447 per month;
- Account No. 8041631: $447 per month;
- Account No. 8069365: $1478 per month; and
- Account No. 8041315: $413 per month.

16.     By 2016, however, Stericycle was charging PBDES the following monthly fees, according to the invoices it sent PBDES:

- Account No. 8169176: $3,407.57 (a 662% price increase)
- Account No. 8041631: $3,615.51 (a 709% price increase)
- Account No. 8069365: $10,604.47 (a 617% price increase)
- Account No. 8041315: $3,012.81 (a 629% price increase)

A copy of these invoices is attached as **Composite Exhibit "2."**

17.     Section 2(b) of the Steri-Safe Service Agreement Terms and Conditions addresses increases in the flat fee during the term of the Agreement. The operative language states:

> Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation.

18.     The Steri-Safe Service Agreement does not contain other language addressing Stericycle's right to increase the flat fee provided for on the cover page of the Agreement.

19.     In sum, the standard form Steri-Safe Service Agreement stated that Stericycle may increase its price only to account for "documented changes in law" and "to cover increases

in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation."

20.     The Steri-Safe Service Agreement renews automatically unless PBDES were to provide 60 days' notice of termination. However, the form Agreement does not provide for an increase in the contract price upon expiration and renewal of the contract. If the Agreement automatically renews according to its terms, Stericycle is obligated to continue to provide service at the original contract price. Again, under the terms of the Agreement, Stericycle may not increase its disposal fee except in two circumstances – to account for "operational changes" implemented "to comply with documented changes in the law" or to "address cost escalation."

21.     Despite these clear limitations on the circumstances under which Stericycle could increase the prices it charged to customers, Stericycle in fact engaged in a systematic, widespread and deliberate practice of raising its prices without any connection to increases in its costs or operational changes necessitated by changes in the law governing medical waste disposal.

22.     On information and belief, during the time Stericycle provided waste disposal services to PBDES, Stericycle imposed an automated price increase ("API") of up to 18% during each calendar year the Agreements were in place. Further, none of these arbitrary price increases were tied to, or justified by, cost increases or operational changes implemented to comply with changes in the law.

23.     On information and belief, Stericycle used an electronic financial accounting and reporting system, named "Tower" to implement its API scheme. The automated price increase process was built into the Tower system, and was designed to impose APIs according to a set schedule, usually in 6 to 12 month intervals. The automated price increases did not internally correlate to Stericycle's own costs or to any "documented changes in law."

24.     Stericycle's API policy was never disclosed to PBDES or authorized by any

agreements between the Parties.

25.     In addition to charging APIs, Stericycle also increased the prices it charged PBDES by imposing myriad fees and surcharges, including, but not limited to, charges designated "Environmental / Regulatory Fees." Although these charges were listed on the invoices PBDES was sent by Stericycle, Stericycle did not disclose, either on the invoice or otherwise, the actual amount of these fees. Nor did Stericycle provide PBDES the basis or justification for such fees.

26.     On information and belief, the fees and surcharges Stericycle charged were neither tied to any actual fees or costs incurred by Stericycle permitted under its agreements with PBDES contracts. Or, they were tied to cost and fee increases Stericycle had already recouped through automated price increases. Moreover, Stericycle's imposition of these fees (which at least purported to have a relationship to Stericycle's regulatory and fuel costs) further underlines the fact that its practice of imposing APIs bore absolutely no connection to increased costs.

27.     PBDES made multiple requests to Stericycle to provide explanations and documentation to justify the enormous increase in prices and fees it was charging PBDES. Stericycle was not forthcoming with either.

28.     In February 2016, PBDES served Stericycle with a formal written notice of non-renewal of all service agreements, if any, that were in place between the Parties.

29.     In August, 2016, PBDES served Stericycle with formal written notice of termination in August 2016 of any and all agreements in place between PBDES and Stericycle (if any) and any business relationship between the Parties.

30.     Stericycle then confirmed in writing on August 26, 2016, that, effective immediately, any agreements in place between the Parties were terminated and service

discontinued, that all open bills were credited, and that no further amounts were due to Stericycle from PBDES from that date forward.

31.     PBDES has retained the firm of Schwarzberg & Associates, which has been promised payment for reasonable attorneys' fees and reimbursement of costs associated with this action.

32.     All conditions precedent to the bringing of this action have occurred, have been performed, or have been excused.

## V.  CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (Florida Law)

33.     The General Allegations are incorporated as if fully set forth herein.

34.     Stericycle formed Agreements and entered into valid and enforceable contracts with PBDES including offer, acceptance, and consideration. Stericycle provided PBDES with a written standard form agreement drafted by Defendant, and PBDES accepted Stericycle's offer and exchanged consideration by using Defendant's services and paying for them. The Parties' contractual relationship defined by Stericycle's Steri-Safe Service Agreement.

35.     PBDES has performed all, or substantially all, of the obligations imposed on it under the Agreements with Stericycle.

36.     PBDES paid regulated medical-waste disposal fees demanded by Stericycle.

37.     Section 2(b) of the Steri-Safe Service Agreement gives Stericycle the ability to unilaterally "adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation."

38.     Stericycle breached its Agreements with PBDES by routinely charging an

8

automated price increase and imposing other undisclosed fees that bore no relation to costs Stericycle incurred or the fees paid for medical waste disposal services. Such automated increases and undisclosed fees were not provided for in the contracts or agreed to by PBDES. Stericycle's practice of systematically imposing arbitrary price increases up to 18% was not to account for "operational changes" Stericycle implemented "to comply with documented changes in the law," to cover its cost increases, or to "address cost escalation."

39.     As a direct and proximate result of Stericycle's breaches of its Agreements with PBDES, PBDES has suffered substantial damages in an amount to be proven at trial.

40.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle's practice of charging PBDES with automated price increases and other prohibited amounts breached Stericycle's contracts with PBDES and was wrongful and unfair. PBDES also seeks entry of a Judgment in its favor against Stericycle for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and any other and further relief the Court deems just and proper.

### COUNT II
### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
### (Florida Law)

41.     The General Allegations are incorporated as if fully set forth herein.

9

42.     Under Florida law, a covenant of good faith and fair dealing is implied in every contract.  It is designed to protect the parties' reasonable contractual expectations and attaches to every term of an express contract.

43.     The Steri-Safe Service Agreements constitute a valid and enforceable contracts between PBDES and Stericycle.

44.     As previously alleged, Stericycle breached express terms of its Steri-Safe Service Agreements with PBDES by, *inter alia*, routinely charging PBDES an automated price increase and imposing other undisclosed fees that bore no relation to any operational changes brought about by changes in the law or other increased costs that could justify a price increase under the Service Agreements.

45.     Section 2(b) of the Steri-Safe Service Agreement gives Stericycle the ability to unilaterally "adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation." In other words, the Agreement grants Stericycle sole or substantial discretion to decide, among other things, when it would impose price increases, by how much, and what portion it would pass on to PBDES, without providing anything more than standards to govern that discretion. Stericycle used its discretion to, *inter alia*, charge PBDES exorbitant rates that were not permitted under the Agreements between the Parties.

46.     Where the terms of a contract afford one party substantial or sole discretion to promote that party's self-interest without defined standards, the duty of good faith limits that party's ability to act capriciously or unreasonably to contravene the reasonable contractual expectations of the other party.

47.     By consciously and deliberately charging PBDES automated price increases unrelated to, or far in excess of, any costs Stericycle incurred to implement operational changes, to cover fuel, insurance, or residue-disposal price increases, or to address cost escalation, Stericycle exercised its discretion in an arbitrary manner that contravened PBDES's reasonable contractual expectations. Stericycle therefore breached the implied duty of good faith and fair dealing it owed to PBDES.

48.     As a direct and proximate result of Stericycle's breaches of the implied covenant of good faith and fair dealing, PBDES has suffered damages in an amount to be proven at trial.

49.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle's practice of charging PBDES with automated price increases and other prohibited amounts breached Stericycle's contracts with PBDES and was wrongful and unfair. PBDES also seeks entry of a Judgment in its favor against Defendant, Stericycle, for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and for any other and further relief the Court deems just and proper.

### COUNT III
### BREACH OF CONTRACT AND BREACH OF THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (Illinois Law)

50.     The General Allegations are incorporated as if fully set forth herein.

51.     Stericycle formed Agreements and entered into valid and enforceable contracts with PBDES including offer, acceptance, and consideration. Stericycle provided PBDES with a written standard form agreement drafted by Defendant, and PBDES accepted Stericycle's offer and exchanged consideration by using Defendant's services and paying for them. The Parties' contractual relationship was defined by Stericycle's Steri-Safe Service Agreement.

52.     PBDES has performed all, or substantially all, of the obligations imposed on it under the Agreements with Stericycle.

53.     PBDES paid regulated medical-waste disposal fees demanded by Stericycle.

54.     Section 2(b) of the Steri-Safe Service Agreement provides Stericycle the ability to unilaterally "adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation."

55.     Stericycle breached its Agreements with PBDES by routinely charging an automated price increase and imposing other undisclosed fees that bore no relation to costs Stericycle incurred or the fees paid for medical waste disposal services. Such automated increases and undisclosed fees were not provided for in the contracts or agreed to by PBDES. Stericycle's practice of systematically imposing arbitrary price increases up to 18% was not to account for "operational changes" Stericycle implemented "to comply with documented changes in the law," to cover its cost increases, or to "address cost escalation."

56.     Under Illinois law, every contract – including the Agreements entered into between PBDES and Stericycle – includes an implied covenant of good faith and fair dealing.

57.     The covenant obligates a party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner

12

inconsistent with the reasonable expectations of the parties.

58.     As stated above, Section 2(b) of the Steri-Safe Service Agreement gives Stericycle the ability to unilaterally "adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation." In other words, the Agreement grants Stericycle sole or substantial discretion to decide, among other things, when it would impose price increases, by how much, and what portion it would pass on to PBDES, without providing well-defined standards to govern that discretion. Stericycle used its discretion to, *inter alia*, charge PBDES exorbitant rates that were not permitted under the Agreements between the Parties.

59.     Where the terms of a contract afford one party substantial or sole discretion to promote that party's self-interest without defined standards, the duty of good faith limits that party's ability to act capriciously or unreasonably to contravene the reasonable contractual expectations of the other party.

60.     By consciously and deliberately charging PBDES automated price increases unrelated to, or far in excess of, any costs Stericycle incurred to implement operational changes, to cover fuel, insurance, or residue-disposal price increases, or to address cost escalation, Stericycle exercised its discretion in an arbitrary manner that contravened PBDES's reasonable contractual expectations. Stericycle therefore breached the implied duty of good faith and fair dealing it owed to PBDES.

61.     As a direct and proximate result of Stericycle's breaches of the Agreements between the Parties and also of the covenant of good faith and fair dealing implied in those Agreements, PBDES has suffered damages in an amount to be proven at trial.

62.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle's practice of charging PBDES with automated price increases and other prohibited amounts breached Stericycle's contracts with PBDES and was wrongful and unfair. PBDES also seeks entry of a Judgment in its favor against Defendant, Stericycle, for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and for any other and further relief the Court deems just and proper.

### COUNT IV
### VIOLATIONS OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Florida Law -- Fla. Stat. § 501.201, *et seq.*)

63.     The General Allegations are incorporated as though fully set forth herein.

64.     The Florida Deceptive and Unfair Trade Practices Act makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204

65.     Stericycle engaged in unconscionable, unfair, or deceptive acts or practices that include, but are not limited to, imposing automated price increases and charging undisclosed fees on PBDES. Defendant knew that its practice was not authorized by any agreements it may have had with PBDES, but Defendant nevertheless used various forms of pressure and trickery to force PBDES to pay the automated price increases.

14

66.     Stericycle further engaged in unconscionable, unfair, or deceptive acts or practices by knowingly or willfully concealing, suppressing, or omitting materials facts from PBDES by making affirmative misrepresentations in order to induce PBDES to enter into medical waste disposal contracts and/or remain a Stericycle customer.  Stericycle's scheme included concealing that its agreements were not actually fixed-price agreements and that it used an automated price-increase algorithm in its computer system to increase PBDES's fees, lying to PBDES about the rates that would be charged, issuing invoices to PBDES reflecting prices greater than those authorized by any agreements between the Parties and without notice of the price increase.

67.     Stericycle's material misstatements and omissions were likely to and did in fact deceive PBDES about Stericycle's services and the prices PBDES would be, and was in fact, charged.

68.     Stericycle's acts or practices offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to PBDES.

69.     PBDES would have acted differently had it known that Stericycle imposed automated price increases, and the automated price increases concerned the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to enter into an agreement to use Stericycle's services. PBDES would have wanted to know, as would any reasonable consumer, that Stericycle imposed automated price increases that bore no relation to its actual costs, and this information would have changed PBDES's and any reasonable consumer's decision to use Stericycle's services. PBDES would have wanted to know that the amounts reflected on the invoices Stericycle issued to it did not accurately reflect the amount PBDES was actually obligated to pay pursuant to any agreement PBDES may have had

with Stericycle, and PBDES would not have paid the excess charges had it known the truth.

70.     Stericycle intended that PBDES would rely on Stericycle's misrepresentations as well as the material facts that it concealed, suppressed, and omitted, as described above. Among other things, Stericycle intended that PBDES rely upon its representations that Stericycle's regulated medical waste disposal fees would be fixed for the term of any contract and would only increase for the reasons stated in the contract. Stericycle further intended that PBDES rely upon the invoices Stericycle issued (intentionally representing to PBDES that they were accurate statements of amounts properly owing), as well as upon the other statements Stericycle made in attempting to justify price increases PBDES.

71.     PBDES relied upon Stericycle's representations that Stericycle's medical-waste disposal fees would be fixed for the term of the Agreements and would only increase for the reasons stated therein. PBDES also relied on the invoices Stericycle issued and as a result paid higher fees than it would have absent Stericycle's wrongful conduct.

72.     Stericycle's conduct violates the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.

73.     Stericycle's unconscionable, unfair, or deceptive acts or practices occurred in the course of conduct involving trade or commerce, as Stericycle committed such acts while engaged in the advertising, soliciting, providing, offering, or distributing of a service, to wit, medical-waste disposal.

74.     PBDES is a "consumer" under the Florida Deceptive and Unfair Practices Act, Section 501.203.

75.     As a direct and proximate result of Stericycle's unconscionable, unfair, or deceptive acts or practices, PBDES has suffered actual damages in an amount to be proven at

trial.

76.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle's practice of charging PBDES with automated price increases and other prohibited amounts breached Stericycle's contracts with PBDES and was wrongful and unfair. PBDES also seeks entry of a Judgment in its favor against Defendant, Stericycle, for actual damages; punitive damages; compensatory damages caused by Stericycle's unfair, wrongful, or deceptive practices; exemplary damages to PBDES for each violation; attorneys' fees and costs; pre- and post-judgment interest at the maximum rate permitted by applicable laws; as well as any other and further relief the Court deems just and proper.

### <u>COUNT V</u>
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AND ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Illinois Law – 815 ILCS § 505/1, *et seq.*; 815 ILCS § 510/2)

77.     The General Allegations are incorporated as though fully set forth herein.

78.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, protects both consumers and companies by prohibiting any unlawful, unfair or fraudulent business acts or practices, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any

material fact, in the conduct of trade or commerce.

79.     Stericycle engaged in unconscionable, unfair, or deceptive acts or practices by imposing automated price increases and charging undisclosed fees on PBDES. Stericycle knew that its practice was not authorized by any agreements it may have had with PBDES, but Stericycle nevertheless used various forms of pressure and trickery to force PBDES to pay the automated price increases.

80.     Stericycle further engaged in unconscionable, unfair, or deceptive acts or practices by knowingly or willfully concealing, suppressing, or omitting materials facts from PBDES by making affirmative misrepresentations in order to induce PBDES to enter into medical waste disposal contracts and/or remain a Stericycle customer. Stericycle's scheme included concealing that its agreements were not actually fixed-price agreements and that it used an automated price-increase algorithm in its computer system to increase PBDES's fees, lying to PBDES about the rates that would be charged, issuing invoices to PBDES reflecting prices greater than those authorized by any agreements between the Parties and without notice of the price increase.

81.     Stericycle's material misstatements and omissions were likely to and did in fact deceive PBDES about Stericycle's services and the prices PBDES would be and was in fact charged.

82.     Stericycle's acts or practices offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to PBDES.

83.     PBDES would have acted differently had it known that Stericycle imposed automated price increases, and the automated price increases concerned the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to

enter into an agreement to use Stericycle's services. PBDES would have wanted to know, as would any reasonable person, that Stericycle imposed automated price increases that bore no relation to its actual costs, and this information would have changed PBDES's and any reasonable customer's decision to use Stericycle's services. PBDES would have wanted to know that the amounts reflected on the invoices Stericycle issued to it did not accurately reflect the amount PBDES was actually obligated to pay pursuant to any agreement PBDES may have had with Stericycle, and PBDES would not have paid the excess charges had it known the truth.

84.     Stericycle intended that PBDES would rely on Stericycle's misrepresentations, as well as the material facts that it concealed, suppressed, and omitted, as described above. Among other things, Stericycle intended that PBDES rely upon its representations that Defendant's regulated medical waste disposal fees would be fixed for the term of any contract and would only increase for the reasons stated in the contract. Stericycle further intended that PBDES rely upon the invoices Stericycle issued (intentionally representing to PBDES that they were accurate statements of amounts properly owing), as well as upon the other statements Stericycle made in attempting to justify price increases PBDES.

85.     PBDES relied upon Stericycle's representations that Stericycle's medical-waste disposal fees would be fixed for the term of the Agreements and would only increase for the reasons stated therein. PBDES also relied on the invoices Stericycle issued and as a result paid higher fees than it would have absent Stericycle's wrongful conduct.

86.     Stericycle's conduct violates the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2. As a violation of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, Stericycle's conduct is a violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2         .

19

87.     Stericycle's unconscionable, unfair, or deceptive acts or practices occurred in the course of conduct involving trade or commerce, and the complained-of conduct in this case implicates consumer protection concerns.

88.     Stericycle's unconscionable, unfair, or deceptive acts or practices proximately caused injury and substantial ascertainable loss to PBDES.

89.     Pursuant to the Illinois Consumer Fraud and Deceptive Businesses Act,  PBDES is entitled to recover its actual damages as well as costs and attorneys' fees.

90.     In addition, Stericycle's fraudulent conduct and misrepresentations were willful and malicious and committed in conscious disregard of PBDES's rights such that an award of punitive damages is proper.

91.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

92.     Pursuant to the Illinois Uniform Deceptive Trade Practices Act, PBDES is entitled to injunctive relief against Stericycle to enjoin present and future deceptive conduct, as well as for an award of Plaintiff's costs and attorneys' fees.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle's practice of charging PBDES with automated price increases and other prohibited amounts breached Stericycle's contracts with PBDES and was wrongful and unfair. PBDES also seeks entry of a Judgment in its favor against Stericycle for actual damages; punitive damages;

compensatory damages caused by Stericycle's unfair, wrongful, or deceptive practices; exemplary damages to PBDES for each violation; attorneys' fees and costs; pre- and post-judgment interest at the maximum rate permitted by applicable laws; as well as any other and further relief the Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT

93.     PBDES conferred a benefit on Stericycle by paying Stericycle for its medical-waste removal services, which service fees Stericycle inflated by, among other things, charging for services not rendered, imposing unlawful price increases, and adding surcharges for energy, fuel, and environmental fees and costs that were not tied to any actual fees or costs incurred by Stericycle.

94.     Stericycle has retained the monies that it acquired from charging PBDES unlawful and unauthorized fees and price increases and for services not rendered.

95.     Stericycle had knowledge that PBDES conferred those benefits on Stericycle.

96.     Stericycle voluntarily accepted and retained the benefits conferred on it by PBDES.

97.     Stericycle was unjustly enriched at the expense of PBDES. Under the circumstances of this case, it would violate the fundamental principles of justice, equity, and good conscience to permit Stericycle to retain these monies unless Stericycle pays PBDES the value of the benefits it received.

98.     As a direct and proximate result of Stericycle's practice of imposing unlawful and unauthorized fees on PBDES and charging PBDES for services not rendered, PBDES has suffered damages in an amount to be proven at trial.

99.     Furthermore, the undisclosed and/or unjustified amounts Stericycle charged

PBDES is a sum certain, or is an amount that is capable of being reduced to a certainty. Upon information and belief, PBDES is therefore entitled to recover prejudgment interest on the amount Stericycle unlawfully charged PBDES, from the date(s) PBDES paid Stericycle the undisclosed and/or unjustified charges ("date(s) of loss") until the date of judgment in this matter.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court order restitution of all automated price increases paid to Stericycle by PBDES, in an amount to be determined at trial, and enter a Judgment in PBDES's favor against Stericycle for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, as well as any other and further relief the Court deems just and proper.

**COUNT VII**
**DECLARATORY RELIEF**
**(No Contracts Between the Parties Were Ever Formed)**

100.    The General Allegations are incorporated as though fully set forth herein.

101.    In or around September 5, 2009, a representative of PBDES, Sharon Gottfried, signed four Steri-Safe Service Agreements under which Stericycle was to provide medical-waste disposal services at PBDES's four office locations.

102.    On information and belief, those Agreements, as signed by Ms. Gottfried, were faxed to Stericycle on September 14, 2009.

103.    Ms. Gottfriend, however, did not have authority to bind PBDES.

104.    Additionally, three of the four Steri-Safe Service Agreements state that the offer contained in the Steri-Safe Agreement would expire on August 13, 2009. Thus, even if Ms. Gottfried did have the requisite authority to bind PBDES, no contract was formed due to PBDES's failure to execute and/or communicate that execution to Stericycle before the offer

expired.

105.     In light of the foregoing, PBDES maintains that no legally-binding agreements were ever entered into between the Parties.

106.     Stericycle has maintained that legally-binding agreements between the Parties came into being.

107.     As such, an actual case and controversy within the meaning of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, exists between the Parties. This Court has the authority to enter a judgment declaring the rights and obligations of the Parties in order to resolve the controversy between them, and such a declaration is necessary and appropriate at this time.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that no legally-binding agreements were ever formed between the Parties and enter a Judgment in PBDES's favor against Stericycle for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and for any other and further relief the Court deems just and proper.

### COUNT VIII
### DECLARATORY RELIEF
**(Any Contracts Between the Parties are Void and
Unenforceable Due to Stericycle's Prior Material Breaches)**

108.     The General Allegations are incorporated as though fully set forth herein.

109.     In light of the foregoing, PBDES maintains that any legally-binding agreements that may have come into existence became void and unenforceable due to Stericycle's Prior Material Breaches and  that any obligations of PBDES were relieved.

110.     Stericycle has maintained that agreements between the Parties that may have come into existence did not become void and unenforceable.

111.    As such, an actual case and controversy within the meaning of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, exists between the Parties. This Court has the authority to enter a judgment declaring the rights and obligations of the Parties in order to resolve the controversy between them, and such a declaration is necessary and appropriate at this time.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that Stericycle materially breached any and all contracts between the Parties and that, as a result of Stericycle's breaches, any and all contracts between Stericycle and PBDES are void and unenforceable. Once the Court makes a declaration as requested, PBDES seeks a Judgment from this Court in its favor against Stericycle for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and for any other and further relief the Court deems just and proper.

## COUNT IX
## DECLARATORY RELIEF
### (Any Service Agreements Were Terminated)

112.    The General Allegations are incorporated as though fully set forth herein.

113.    On February 12, 2016, PBDES served Stericycle with a formal written notice of non-renewal of all service agreements, if any, that were in place between the Parties.

114.     Subsequently, on August 19, 2016, the undersigned served Stericycle with formal written notice of termination of any and all agreements in place between PBDES and Stericycle (if any) and any business relationship between the Parties.

115.    Stericycle then confirmed in writing on August 26, 2016, that, effective immediately, any agreements in place between the Parties were terminated and service discontinued, that all open bills were credited, and that no further amounts were due to Stericycle

from PBDES from that date forward.

116.    In December, 2016, however, PBDES received two letters from a debt collection agency demanding payment from PBDES in the amount of $36,607.78 on behalf of the agency's purported client, Stericycle, Inc.

117.    On January 3, 2017, PBDES served formal notice disputing the alleged debt on the collection agency and sent a copy of this notice to Stericycle.

118.    PBDES maintains that any and all service agreements in place between the Parties, if any, were terminated and service discontinued on or before August 26, 2016, and that all open bills were credited and no further amounts were due to Stericycle from PBDES from that date forward.

119.    As such, an actual case and controversy within the meaning of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, exists between the Parties.

120.    This Court has the authority to enter a judgment declaring the rights and obligations of the Parties in order to resolve the controversy between them, and such a declaration is necessary and appropriate at this time.

WHEREFORE, Plaintiff, PBDES, respectfully requests that this Court declare that, on or before August 26, 2016, any and all service agreements in place between the Parties were terminated and service discontinued, that any and all open bills were credited, and that PBDES has no outstanding obligations, of any kind, to Stericycle. Once the Court makes a declaration as requested, PBDES seeks a Judgment from this Court in its favor against Stericycle for damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate permitted by applicable laws, and for any other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.

SCHWARZBERG & ASSOCIATES
*Attorneys for Plaintiff*
625 N. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Telephone:     (561) 659-3300
Facsimile:     (561) 693-4540

By: ***Steven L. Schwarzberg***
   STEVEN L. SCHWARZBERG
   Florida Bar No. 0306134
   steve@schwarzberglaw.com
   mail@schwarzberglaw.com
   PHOEBE J. ECKSTEIN
   Florida Bar No. 0103886
   peckstein@schwarzberglaw.com
   mail@schwarzberglaw.com